# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**RICK DEAN BRYANT,**

    Plaintiff,

vs.   Civ. No. 07-574 MCA/ACT

**CITY OF ROSWELL in the Chaves County of New Mexico,**

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court upon Defendant's Motion for Summary Judgment filed October 11, 2007 [Doc 22]. This case was referred to the undersigned United States Magistrate Judge on June 21, 2007, to submit proposed findings of fact and recommendation for the disposition of this case pursuant to 28 U.S.C. §636(b)(1) [Doc. 3]. Having considered the pleadings and the relevant law, the undersigned recommends that Plaintiff's Complaint be dismissed with prejudice.

## PROPOSED FINDINGS

1.    This is a *pro se*, *in forma pauperis* civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Rick Dean Bryant ("Bryant"). On June 14, 2007, Bryant filed his Complaint alleging Defendant violated his constitutional rights.

2.    The following facts are undisputed. On September 30, 2005, Fernando Hernandez ("Hernandez"), a Code Enforcement Officer for the City of Roswell, posted a "Vehicle Notice of

Code Violation" on Bryant's 1961 green Ford.  The Notice requested Bryant to"to restore it to operable condition; store it an enclosed area and out of public view or remove to an approved storage area not later than **thirty (30) days** from the date of which notice what date shall be: October 31, 2005."

   3. Bryant did not comply with the Notice.  Bryant did not obtain a permit to allow him up to six months to restore the vehicle to operative condition or file a written request for a hearing before the municipal court judge to defend the charges.

   4. On November 14, 2005, pursuant to city ordinance Section 16-36, Defendant towed Bryant's 1961 green Ford.  On that same day, Hernandez sent,  by certified mail, a copy of the "Vehicle Impoundment and Inventory Record" to Bryant.

   5. On November 30, 2005, Bill Bartlett ("Bartlett"), a Code Enforcement Officer for the City of Roswell, sent a letter to Bryant stating:

> An inspection of the property at **710 West 11st St.** Roswell, Chaves, County, New Mexico, reveals a violation  (s) of **ROSWELL MUNICIPAL CODE 16-6 ( a thru d )**, **UNSANITARY OR HAZARDOUS PREMISES; CERTAIN SOLID WASTES** (as described below).
>
> The specifics of the violation are **pile of debris and litter along with fire damaged structure** on or about the property.  **Please clean up and dispose of these items.**
>
> I will recheck the property no earlier than **TEN (10) DAYS** to determine if the violation has been corrected.  If it has been corrected then no further action will be taken.  If it has not been corrected, the city will proceed with its available options.
>
> Should you not be able to comply with this notice before the above date or if you have any questions please call me at the telephone number listed below my name.

   6. On December 12, 2005, Bartlett sent Bryant a Final Notice which stated:

> The Code Enforcement Department sent you notification to correct or contact the Code Enforcement Department regarding the **Unsanitary or Hazardous Premises**, on the property of **710 W 11th** dated **11-30-05**.  Upon inspection of the property on1**2-12-05**, it

was found the violation(s) still remain on the property.  Should I not be contacted, or the violation corrected by **12-22-05**, I will have no alternative but to pursue legal action against you the responsible party of the property by means of a criminal complaint being filed in Municipal Court.

7.      On May 3, 2005, the Roswell Fire Department was dispatched to 710 W. 11th St. A wood construction outbuilding behind the residence was on fire.  The structure and its contents were destroyed by the fire.

8.      On January 5, 2006, Bartlett filed a Criminal Complaint against Bryant for "unsanitary premises."  A Criminal Summons was mailed ordering Bryant to appear before Municipal Court Judge Hector Pineda on January 19, 2006.  When Bryant failed to appear, Judge Pineda signed an Order to Show Cause, which was mailed by the clerk, ordering Brant to appear on February 7, 2006.  The Order to Show Cause also stated that **"FAILURE TO APPEAR WILL RESULT IN A WARRANT FOR YOUR ARREST."**

9.      On February 3, 2006, Charles Purcell, Building Inspector, inspected posted the following on the house at 710 W. 11th St., Roswell, New Mexico.

> **NOTICE IS HEREBY GIVEN** that the City Building Inspector has inspected this building on the 3rd day of February, 2006, and has found the same to be in a
> **DANGEROUS, DAMAGED AND DILAPIDATED** state and is hereby declared to be a menace to the public comfort, health, peace and safety.
> You have 10 **(TEN)** days after receipt of this notice to notify this office as to your intentions.
> After 10 (TEN) days, condemnation procedures will be taken.
> The City may remove any such unsafe structure(s) and thereafter file its claim of lien against your property for the cost of removal according to the law.
> You may file a written objection with the City  Clerk, requesting a hearing before the City Council in accordance with the provisions of § 3-18-5E, NMSA 1978.
> **A COPY OF THIS NOTICE WILL BE POSTED ON THE PREMISES, BOARDING UP WINDOWS AND DOORS WILL NOT BE ACCEPTED AS A MEANS OF REPAIR.**

10.     Bryant did not file any objections with the City Clerk and did not request a hearing

before the City Council.

11.     Bryant failed to appear before Judge Pineda on February 7, 2006. On February 8, 2006, Judge Pineda issued a Bench Warrant.

12.     On March 9, 2006, pursuant to Resolution No. 06-12, the City Council declared the premises at 710 W. 11th St. "to be in such state of disrepair, damage and dilapidation as to constitute a dangerous building within the purview of Roswell Municipal Code section 16-12, as well as being a public nuisance prejudicial to the public, health, safety and general welfare." Purcell sent a copy of the resolution to Bryant by certified mail, return receipt requested; posted the resolution on the premises, and legally published the resolution in the Roswell Daily Record on March 17, 2006. Pursuant to Resolution No. 06-12, Bryant was ordered to remove the dangerous structures off of his property within a reasonable time, not to exceed fifteen (15) days from the receipt of notice by certified mail or from the date of publication of the resolution. The Resolution further provided that if removal was not accomplished and Bryant did not object, the City Manager is authorized to accomplish the removal and a lien against the property will be valid for the cost of removal.

13.     Bryant did not remove the dangerous structures, make written objections, or request a hearing.

14.     Pursuant to the February 8, 2006, Bench Warrant, Bryant was arrested on March 30, 2006. On that same date, after waiving his right to counsel, he entered a plea of guilty for failure to appear and for having unsanitary premises. Judge Pineda sentenced him to a fine of $156.00, ten days imprisonment, and ordered Bryant to comply with Roswell City Ordinance 16-6 within ten days of this release.

15.     On April 27, 2006, Judge Pineda ordered Bryant to appear on May 11, 2006, to show

cause for his failure to comply with the Court's March 30, 2006, Order. Bryant failed to appear and Judge Pineda executed a Bench Warrant for Bryant's arrest. Bryant was arrested on May 13, 2006. On May 15, 2006, after waving his right to counsel, Bryant entered a plea of guilty for his failure to appear. He was sentenced to a fine of $28.00 and ten days imprisonment.

16. On May 23, 2006, the Roswell Fire Department was dispatched to 710 W. 11th St. The house was on fire. The house and the contents were destroyed by the fire.

17. On May 25 and 26, 2006, the City of Roswell removed the dangerous, dilapidated and damaged structures from Bryant's premises.

18. On or about November 14, 2006, the City of Roswell placed a lien of $5,734.26 on Bryant's property. Bryant asserts in his Complaint that when he was checking property records he discovered his property had a $5,400.00 lien attached.

19. On or about December 4, 2006, a Criminal Complaint was filed against Bryant in Roswell District Court for possession of drugs and drug paraphernalia. On December 5, 2006, A. Richard Greene ("Greene"), Assistant Public Defender, entered his appearance on behalf of Bryant. Greene is not an employee of the Defendant. On February 6, 2007, the Honorable Charles C. Currier ("Judge Currier") set a first pre-trial hearing on April 2, 2007. Currier is not an employee of the Defendant. Bryant failed to appear and the Court entered an Order Forfeiting Bond. Bryant was remanded to custody on or about June 1, 2007.

20. On June 14, 2007, Bryant filed his Complaint against the City of Roswell, while incarcerated at the Chaves County Detention Center. The City of Roswell does not own or operate the Chaves County Detention Center.

21. On or about August 31, 2007, Bryant entered into a Plea and Disposition Agreement

and was released.

**Summary Judgment standard.**

22.     Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Only disputes over facts that might affect the outcome of the suit under the applicable law will preclude summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

**Prison conditions.**

23.     Bryant filed this Complaint while he was incarcerated at the Chaves County Detention Center.  Bryant alleges that is constitutional rights had been violated by various prison conditions including not receiving mail, lack of storage for his clothes, no microwave or hot plate to heat water, and denied access to the courts.  It is undisputed that the City of Roswell does not own or operate the Chaves County Detention Center. Bryant has not asserted any theory under which the Defendant could be liable for these allegations.  Thus, these claims should be dismissed with prejudice.

**Judge Charles Currier and A. Richard Greene**.

24.     Bryant alleges Judge Currier and Green violated his constitutional right to a speedy trial.  It is undisputed that the Defendant did not employ these individuals. Bryant has presented no theory under which the Defendant would be liable for any of these individual's acts or omissions. Thus, all claims asserted against the Defendant for the alleged failure to receive a speedy trial should be dismissed.

**Arrests on July 26, 2002, August 22, 2002, November 1, 2002, November 30, 2003, and February 20, 2004.**

25.     Bryant alleges he was arrested and harassed on July 26, 2002, August 22, 2002, November 1, 2002, November 30, 2003, and February 20, 2004.  Claims for unlawful arrest would

be brought pursuant to 42 U.S.C. § 1983. The statute of limitations for personal injury actions applies to § 1983 claims. *Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir. 1984) *aff'd*, 471 U.S. 261 (1985). New Mexico statute of limitations for personal injury actions is three years. NMSA § 37-1-8. Since Bryant did not file his Complaint within the three years as required, any claim he has for these arrests should be dismissed.

**Arrests and Convictions on March 30, 2006 and May 15, 2006**.

26.     On March 30, 2006, Bryant pled guilty for failure to appear and for having unsanitary premises. On May 15, 2006, Bryant pled guilty for failure to appear. Bryant pled guilty to the charges underlying both arrests. Therefore he cannot bring a claim that his constitutional rights were violated as a result of these arrests. *Heck v. Humphrey*, 512, U.S. 477, 480-81 (1994) ("[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment...a § 1983 plaintiiff must prove that the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal...or called into question by a federal court's issuance of a write of habeas corpus..."). Thus, any claim Bryant may have as a result of these arrests and convictions should be dismissed.

**Removal of dangerous structures, towing of 1961 green Ford and lien.**

27.     Bryant alleges that his property was taken without due process. Bryant cannot prevail on his due process claims.

*Procedural due process.*

28.     The essence of procedural due process is the provision to the affected party of "*some* kind of notice and...*some* kind of hearing." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation

omitted).  In determining whether a governmental or public agency has deprived an individual of his due process rights, the Court engages in a two-pronged inquiry: (1) did the individual have a protected interest giving rise to due process protection; and if so, (2) did the government afford the individual with the appropriate level of process. *Garcia v. City of Albuquerque*, 232 F.3d 760, 769 (10th Cir.2000). If the Court determines that the Due Process Clause applies based on the existence of a protected property interest, the question that remains is what process was due. *Id.* (*citing Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)).

29.     Assuming a property interest in the contents removed by the Defendant, it is unclear what process claims Bryant claims were due and denied to him.  The undisputed facts are that Bryant was given notice before any action by Defendant and had an opportunity to be heard.  Prior to the towing of his car, a notice was posted on the car requesting that it be restored to an operable condition, stored in an enclosed area away from public view or removed to an approved storage area. The notice also informed Bryant of his right to defend the charges by filing a written request for a hearing before the municipal court judge.

30.     Similarly, Defendant sent a letter to Bryant regarding the unsanitary premises at 710 West 11th St..  This letter stated he must clean up the property, but should he be unable to comply to call Bartlett.  When Bryant took no action, Bartlett sent Bryant a Final Notice stating that if Bryant did not correct the violation or contact Bartlett, a criminal complaint would be filed.  Bryant did not contact Bartlett and a criminal complaint was filed for unsanitary premises.  Bryant failed to appear as ordered and a show cause order was issued.

31.     After a fire in an outbuilding at 710 W. 11th St., Purcell posted a notice that condemnation procedures would be taken and the city would remove the unsafe structure and file a

lien if Bryant did not remove the dangerous structure. The notice stated that Bryant could file written objections with the City Clerk and request a hearing before the City Council. Bryant did not file any objections nor did he request a hearing. He failed to appear before the municipal judge and the judge issued a Bench Warrant.

  32. Finally, Bryant was warned by Resolution No. 06-12 that if he did not remove the dangerous structures the Defendant would do so and place a lien against the property for the valid cost of removal. Again Bryant did not remove the dangerous structure, provide written objections, or request a hearing.

  33. Prior to any act by the Defendant, Bryant was given notice and an opportunity to be heard. Not only was he given due process but failed to take advantage of the due process available to him. In instances when a litigant fails to take advance of the available procedures, courts find that the individual has waived his right to challenge the constitutionality of the procedures. *Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kan.*, 869 F.2d 555, 557 (10th Cir. 1989); *Ballmer v. Board of County Commissioners of Sedgwick County, Kansas,* 930 F.2d 32, 1991 WL 50161, *9 (10th Cir. (Kan.)) (by waiving administrative hearing, plaintiff gave up right to test the correctness of the board's decision).

  *Substantive due process.*

  34. Substantive due process protects individuals against "arbitrary action of government" that deprives a citizen of life, liberty or property "whether the fault lies in the denial of fundamental procedural fairness...or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Perez v. Unified Gov't of Wyandotte County/Kan.City, Kan.*, 432 F.3d 1163, 1166 (10th Cir. 2005) (citation omitted). "The ultimate standard for determining

whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (01th Cir. 2006 (quotations omitted). Ordinary negligence does not shock the conscience. *Ruiz v. McDonnell*, 299 F.3d 1173, 1184 (10th Cir. 2002). Based on a review of the undisputed facts in this matter, the Court does not find any conduct that would rise to negligence much less conduct that would "shock the conscience."

> *Takings clause.*

35. Bryant alleges that his constitutional rights under the Fifth Amendment were violated. The Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const., amend. V. The "takings clause" of the Fifth Amendment applies to the states through the Fourteenth Amendment due process clause.

36. Bryant cannot prevail on his Fifth Amendment claim. Demolition or clean up pursuant to local law and procedure to abate a public nuisance is not a taking as contemplated by the Fifth Amendment. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1022-24 (1992) ("[L]and-use regulation does not effect a taking if it substantially advances legitimate state interests...." (internal quotation marks and brackets omitted); *Id*. at 1030; *Keystone Bituminous Coal Ass'n. v. DeBenedictis,* 480 U.S. 470, 491-92 (1987) (holding that abating a public nuisance is not a taking under the Fifth Amendment because "[l]ong ago it was recognized that 'all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community,' ... and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it.") (internal citation omitted); *County of Westchester v. Town of Greenwich, Conn*.756 F.Supp.154 (S.D.N.Y.,1991) ( "It would be alarming to suggest that a takings claim could

be established any time a party, whether private or governmental, sought to abate a public nuisance.")

37.     Moreover, if the Defendant's actions were subject to the "takings clause" of the Fifth Amendment, Bryant cannot assert a § 1983 takings claim until he demonstrates that he has sought compensation for the loss through the procedures the State has provided for doing so. *Williamson County Regional Planning Commission v. Hamilton Bank*, 472 U.S. 172, 186, 194 (1985). The State of New Mexico has specifically provided that a property owner may bring an inverse condemnation action to obtain just compensation through suit in state court. NMSA § 42A-1-29. Bryant has not demonstrated that he has filed an inverse condemnation action in state court.     **Conspiracy claim.**

38.     Bryant filed a conspiracy claim in one of his supplemental complaints [Doc. 8]. Bryant's claim is conclusory, does not state sufficient facts to prove the existence of a conspiracy and the deprivation of constitutional rights, and thus does not state a claim under § 1983. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995). The record before the Court is void of any evidence that the Defendant conspired with anyone to violate his constitutional rights. Instead, the record demonstrates that the Defendant did not violate his constitutional rights. Thus, Bryant's conspiracy claim should be dismissed with prejudice.

**Equal protection claim.**

39.     In his various pleadings, Bryant claims he was treated differently than his neighbor. Assuming he asserts an equal protection claim, he cannot prevail. The equal protection clause is triggered when the government treats someone differently than another who is similarly situated. *Buckley Constru., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991) (*citing City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The equal protection

clause protects not only against discrimination where victims within an identified classification or group are injured, but also where the plaintiff alleges an element of intentional or purposeful discrimination so as to invoke the clause to protect an individual claim. *Bartell v. Aurora Public Schools,* 263 F.3d 1143, 1148 (10th Cir. 2001). Bryant alleges that he was treated differently than a neighbor. Since he does not mention a classification or group the Court will analyze this claim under the class-of-one-theory. To show a constitutional violation under the class-of-one theory, Bryant must establish two elements: (1) that the Defendant acted with discriminatory intent; and (2) that the Defendant treated the Plaintiff differently from others who are similarly situated without a rational basis for doing so. *Id.* at 1149. To establish discriminatory intent, Bryant must show that the Defendants' actions were a spiteful effort to "get" the Plaintiff for reasons wholly unrelated to any legitimate state objective. *Id.* There is no evidence of discriminatory intent. Moreover, Defendant's actions were related to a legitimate state objective. Thus, any equal protection claim Bryant may have asserted should be dismissed.

## RECOMMENDED DISPOSITION

I recommend that Plaintiff's claims asserted in his Complaint filed June 14, 2007, and supplements to his Complaint filed, July 16, 2007 [Doc. 8], July 18, 2007 [Doc. 9], and July 23, 2007 [Doc. 10], be dismissed with prejudice.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. Sec. 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque, NM 87102. A party must file any objections within the ten-day period allowed if that party wants

to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

                                              _____
                                              **ALAN C. TORGERSON**
                                              **UNITED STATES MAGISTRATE JUDGE**